J-S09019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHARLES ROBINSON | : | |
| | : | |
| Appellant | : | No. 3689 EDA 2018 |

Appeal from the Judgment of Sentence Entered January 30, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000398-2016

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                         **FILED JUNE 22, 2020**

Charles Robinson appeals from the judgment of sentence, entered in the
Court of Common Pleas of Philadelphia County, following his conviction for
possession of firearms—persons not to possess,[1] carrying firearms without a
license,[2] conspiracy—making any materially false oral statement,[3] making any
materially false oral statement,[4] tampering with public records or

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] 18 Pa.C.S.A. § 6106(a)(1).

[3] 18 Pa.C.S.A. § 903.

[4] 18 Pa.C.S.A. § 6111(g)(4).

information,[5] and carrying firearms in public in Philadelphia.[6] Upon careful review, we affirm.

Marcella Hardnett, who testified for the Commonwealth, had been friends with Robinson since childhood. N.T. Trial, 11/21/16, at 12. During a conversation in March 2015, in response to Hardnett's concerns about the high rate of crime in her neighborhood, Robinson suggested that the two of them purchase a gun. *Id.* at 13. Hardnett agreed, although she was aware that Robinson was prohibited from purchasing a firearm for himself. *Id.* A few weeks later, on March 18, 2015, pursuant to their agreement, Robinson picked Hardnett up at her home and drove to Delia's gun shop in Philadelphia, which was located near Robinson's home. *Id.* at 14-15, 40.

Once inside, Robinson pointed out a .38 caliber Ruger handgun and directed Hardnett to purchase it. *Id.* at 16, 20-21. As Hardnett waited for her background check to clear, Robinson left the store. *Id.* at 21. He returned approximately thirty to forty-five minutes later, handed Hardnett the purchase money, and instructed her to buy ammunition as well. *Id.* at 21-22. Hardnett purchased the firearm and ammunition with the money Robinson gave her. *Id.* at 22. Immediately upon leaving the store, Hardnett handed Robinson the gun. *Id.* at 22. Robinson then told Hardnett to report the gun stolen in

---

[5] 18 Pa.C.S.A. § 4911(a)(1).

[6] 18 Pa.C.S.A. § 6108.

one week. *Id.* at 23. In exchange for Hardnett's cooperation, Robinson paid her approximately thirty dollars. *Id.* at 38.

Surveillance footage from inside and outside of Delia's gun store was presented at trial and narrated by Hardnett; it captured Robinson pointing out the firearm, leaving and returning to the store, handing Hardnett the purchase money, and retrieving the gun from her upon exiting the store. *Id.* at 33-36; (Video Surveillance, Channel 2 at 13:44 - 14:26; Channel 5 at 14:26-14:26:25).

One week after the purchase, on March 25, 2015, Hardnett complied with Robinson's request. *Id.* at 23. Hardnett met with Detective Daniel Strunk of the Philadelphia police, Southwest Detective Division, and reported the gun stolen. *Id.* at 24. Hardnett told Detective Strunk that the firearm she purchased for self-defense just days earlier was stolen from her basement. *Id.* at 24-25, 61-62. She explained that there were no signs of forced entry and that nothing else was taken. *Id.* Detective Strunk testified that he told Hardnett, because her story was inconsistent and "didn't make sense,"[7] that he would refer the case to the Gun Violence Task Force. *Id.* at 62-63.

---

[7] Detective Strunk testified that he was suspicious about the firearm, allegedly purchased for self-defense, being kept in Hardnett's basement. N.T. Trial, 11/21/16, at 62. He also had "concerns" about the lack of forced entry and the fact that nothing else was taken. *Id.*

That same day, Hardnett met with Agent Marty Dietz of the Gun Violence Task Force, along with Detective Strunk. *Id.* at 26, 62. She initially told Agent Dietz the same information she gave to Detective Strunk. *Id.* at 26, 62. The police told Hardnett that she would not be going home if she did not tell them the truth. *Id.* at 43. Hardnett ultimately signed a *Mirandized*[8] written statement confessing that she acted as the straw purchaser for Robinson's firearm in exchange for money. Commonwealth Exhibit C-2, 3/25/15, at 2. Hardnett testified that she did not implicate Robinson initially because she "didn't want to get him in trouble." N.T. Trial, 11/21/16, at 43.

Hardnett further testified that, upon leaving the police station that day, she called Robinson and requested that he give her back the gun. *Id.* at 26. Hardnett explained to him that she had to turn the gun in to the police, and that she was facing criminal prosecution in connection with her false report of theft. *Id.* Robinson told her, "I ain't going to jail," and Hardnett never heard from him nor saw the gun again. *Id.* After a conversation with Agent Dietz on the following day, March 26, 2015, Hardnett signed another written, *Mirandized* statement detailing, among other things, her phone call with Robinson. *Id.* at 44; Commonwealth Exhibit C-3, 3/26/15. Hardnett later pled guilty to several charges stemming from the illegal purchase, including carrying a firearm without license, delivering a firearm to the purchaser less

---

[8] *See Miranda v. Arizona*, 396 U.S. 868 (1969).

than forty-eight hours after applying for a firearm purchase, criminal conspiracy, tampering with public records, unsworn falsification to authorities, and falsely reporting to law enforcement authorities,[9] pursuant to a plea agreement with the Commonwealth in which she agreed to testify truthfully in this matter. *Id.* at 29-31.

On November 21, 2016, after a non-jury trial before the Honorable Mia R. Perez, Robinson was convicted of the above crimes. On January 30, 2017, Robinson was sentenced to an aggregate term of six to twelve years' imprisonment followed by three years of reporting probation. Robinson filed a *pro se* petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, on February 5, 2018. Counsel was appointed and filed an amended PCRA petition on July 5, 2018, raising claims of trial counsel's ineffectiveness for failing to file post-sentence motions and a direct appeal, in addition to seeking reinstatement of Robinson's appellate rights *nunc pro tunc*. On December 17, 2018, the PCRA court reinstated Robinson's appellate rights *nunc pro tunc*. Robinson timely filed a notice of appeal on December 26, 2018, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

_____

[9] CP-51-CR-0007109-2015.

Robinson raises the following issues for our review:[10]

I.  Whether the verdicts of guilty to the three (3) firearm charges were against the weight of the evidence where the cooperating co-defendant's testimony was unbelievable, incredible[,] and where she admitted to lying to police about the facts of the case?

II. Whether the evidence produced at trial was sufficient to sustain the jury's verdict of guilty to the three (3) firearm charges where the evidence was weak a[n]d inconclusive and where the convictions were based on speculation and conjecture?

Brief of Appellant, at 3-4.

Robinson contends that he is entitled to a new trial because, with regard to his convictions under the Violations of the Uniform Firearms Act (VUFA)—sections 6105, 6106, and 6108 of the Crimes Code—the verdict was against the weight of the evidence. Specifically, Robinson argues that the trial court abused its discretion when it credited Hardnett's trial testimony, because Hardnett gave two different stories to the police. Brief of Appellant, at 11.

When challenging the weight of the evidence, relief in the form of a new trial may be granted only where the verdict shocks one's sense of justice.

_____

[10] We note with strong disapproval that the Commonwealth failed to timely file an appellate brief with this Court, even after being granted four separate extensions of time. *See* Order, 9/3/19 at 1; Order, 10/7/19 at 1; Order, 11/18/19 at 1; Order, 12/30/19 at 1. This Court's order on November 18, 2019, provided that the Commonwealth's brief shall be filed by December 4, 2019, and that no further extensions of time would be granted to the Commonwealth. Yet, on December 30, 2019, this Court granted the Commonwealth's fourth application for extension of time, and ordered that the Commonwealth file its appellate brief by January 10, 2020. The Commonwealth did not file its appellate brief until March 3, 2020.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Mitchell*, 902 A.2d 430, 449 (Pa. 2006). Where the trial court has ruled on a weight claim, our review is limited to determining whether the trial court "palpably abused its discretion in ruling on the weight claim." *Champney*, *supra* at 408. Where, however, a defendant fails to raise a challenge to the weight of the evidence with the trial judge, that challenge is waived. *See* Pa.R.Crim.P. 607(a)(1)-(3) (claim verdict was against weight of evidence shall be raised with trial judge in motion for new trial orally on record, by written motion before sentencing, or in post-sentence motion); *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa. Super. 2004), *appeal denied*, 863 A.2d 1143 (Pa. 2004) ("A challenge to the weight of the evidence must be raised with the trial judge or it will be waived.").

Robinson's failure to challenge the weight of the evidence before the trial court deprived that court of the opportunity to exercise discretion on the question of whether to grant a new trial. Thus, with regard to Robinson's weight claim, this Court has nothing to review on appeal. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) ("appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence"). Because Robinson failed to present his weight of the evidence claim to the trial judge, we conclude that Robinson waived this claim. *See Commonwealth v. Mack*,

850 A.2d 690, 694 (Pa. Super. 2004) (weight claim waived by noncompliance with Rule 607 even if trial court addresses it on the merits in 1925(a) opinion).

Robinson also challenges the sufficiency of the evidence for his three VUFA convictions. He submits that with respect to each conviction, "the Commonwealth failed to prove beyond a reasonable doubt that [Robinson] possessed the firearm." Brief of Appellant, at 14.

Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015). We review the evidence in the light most favorable to the Commonwealth as verdict winner to determine whether there is sufficient evidence to allow the fact-finder to find every element of a crime beyond a reasonable doubt. *Id.*

> In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014).

Section 6105 of the Crimes Code provides that "a person who has been convicted of an offense enumerated in subsection (b) . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a)(1). Section 6106 states that an individual without proper licensure may not carry a firearm in any vehicle or concealed on his person except in his home or fixed place of business. 18 Pa.C.S.A. § 6106(a). Lastly, section 6108 provides that it is illegal for an individual without proper licensure to carry a firearm at any time upon the public streets of Philadelphia. 18 Pa.C.S.A. § 6108(a).

Robinson stipulated at trial that he has been convicted of an offense enumerated in section 6105(b) and is ineligible to possess a firearm. N.T. Trial, 11/21/16, at 59-64. Therefore, "[i]n the aggregate, three facts need to be proven to maintain these convictions: [Robinson] possessed a firearm, he maintained possession within a vehicle or carried it in a concealed manner, and he possessed the firearm in public." Trial Court Opinion, 4/18/19, at 4.

Instantly, Robinson claims that the Commonwealth failed to prove beyond a reasonable doubt that he possessed the firearm, an element of each of the three VUFA offenses. Brief of Appellant, at 14. Specifically, Robinson argues that "the only evidence presented by the Commonwealth that [Robinson] possessed the gun was [Hardnett's] testimony." *Id.* Incredibly, he asserts that "no video or other physical evidence was ever presented that [Robinson] took possession of the gun," and that accordingly, the "volume

and quality" of the Commonwealth's evidence was insufficient to sustain his conviction. *Id.*

"It is well-settled that the uncorroborated testimony of a prosecution witness may be sufficient to convict[, even] in spite of contrary evidence from the defense, if the trier of fact, based on the evidence before it, chooses to lend credibility to the former." *Commonwealth v. Kearney*, 601 A.2d 346, 349 n.6 (Pa. Super. 1992); *see also Commonwealth v. Robinson*, 817 A.2d 1153, 1161-62 (Pa. Super. 2003) (eyewitness testimony sufficient to sustain VUFA violation even though no weapon was recovered). Here, the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to sustain Robinson's convictions because it demonstrated, beyond a reasonable doubt, that Robinson actually possessed a firearm in public and maintained possession within his vehicle.

Hardnett testified that Robinson drove her to Delia's gun shop, paid her to buy a firearm and ammunition for him, and directed her to report the gun stolen one week later, which she did. N.T. Trial, 11/21/16, at 13-23. She further testified that she handed Robinson the firearm immediately upon exiting the store, and that after she falsely reported the gun stolen per Robinson's instructions, she ultimately confessed to the police about her arrangement with Robinson and asked him to return the gun, which he refused to do. *Id.* at 22-26. This alone would be sufficient to sustain Robinson's convictions. *Kearney*, *supra*; *Robinson*, *supra*.

Moreover, the record belies Robinson's assertion that the "only evidence" concerning his possession of a firearm was Hardnett's testimony. The Commonwealth presented surveillance footage from Delia's gun shop that fully corroborated Hardnett's testimony regarding the straw purchase and Robinson's firearm possession.[11]  *Id.* at 33-37.  Circumstantial evidence allows the Court to conclude that Robinson maintained possession of the weapon during his transport, in a vehicle, back to Hardnett's residence, after exiting the store.

In sum, the Commonwealth's evidence at trial is sufficient to sustain each of Robinson's convictions for VUFA violations.  *See Kearney*, *supra*; *Robinson*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/20

---

[11] The surveillance footage presented at trial has not been made available to us despite requests for the same.  However, Hardnett narrated the video as it was played during trial:  she identified herself and Robinson in the gun store on March 18, 2015, and testified that "what [she] saw on the video" at "14[:]25[:]50" was "[her giving] him the gun."  N.T. Trial, 11/21/16, at 33-37.