J-S10002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAZEN F. SALFITI | : | |
| | : | |
| Appellant | : | No. 1698 EDA 2018 |

Appeal from the Judgment of Sentence May 23, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003995-2017

BEFORE:   GANTMAN, P.J.E., STABILE, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED MARCH 22, 2019**

Appellant, Mazen F. Salfiti, appeals from the judgment of sentence of

three to twelve months of confinement followed by three years of probation,

which was imposed after his conviction at a bench trial for indecent assault

without consent, harassment – subjects the other person to physical contact,

and indecent assault by forcible compulsion.[1]  We affirm.

The facts underlying this appeal are as follows:

The [V]ictim and Appellant knew each other from the [V]ictim's
prior employment at Wawa[, a convenience store].   N.T.,
2/15/[20]18, at 35-44.  On April 12, 2017, the [V]ictim, a senior
at North Penn High School, exited the Wawa located in
Towamencin, Montgomery County, P[ennsylvania,]   after
purchasing coffee on her way to school.  [*Id.*] at 44.  As the
[V]ictim exited Wawa to walk to her car, Appellant, who was
sitting outside Wawa in his minivan, called out to the [V]ictim by
her nickname, and asked her to "come over..."  [*Id.*] at 44-46.

---

[1] 18 Pa.C.S. §§ 3126(a)(1), 2709(a)(1), and 3126(a)(2), respectively.

*   Retired Senior Judge assigned to the Superior Court.

> To be polite, the [V]ictim approached Appellant and, stood outside his minivan. [*Id.*]
>
> According to the [V]ictim, there was small talk consisting of Appellant complimenting her and trying to get her to go out with him. [*Id.*] at 45. During their conversation, Appellant placed his hand on the back of the [V]ictim's head, pulled her in through his window, tried giving her a kiss, and told her to open her mouth. [*Id.*] at 47-49[,] 62-63[; Ex. C-1 (DVD of surveillance footage from Wawa)]. Specifically, the [V]ictim testified that Appellant "was just trying to kiss me" and "kept just repeatedly saying open my mouth, give me a kiss"; and that Appellant's "lips were on [her] lips," "his tongue was on [her] lips, but [she] kept [her] mouth closed," and that she felt "really uncomfortable." N.T., 2/15/[20]18, at 51. Moreover, she testified that she "was pulling back, but he didn't let me pull back." [*Id.*] at 53.

Trial Court Opinion, filed July 23, 2018, at 4-5 (some formatting). During cross-examination, the Victim's testimony continued:

> Q.     It says in here, [in the Victim's] statement to the police, which I'll show you on page 2: ". . . He then refused to let go after I told him to stop and yelled."
>
>        What did you yell?
>
> A.     I did not yell. I did raise my voice to tell him to stop. . . .
>
> Q.     So the most contact that occurred between the two of you was his arm around you and his tongue touching your lips?
>
> A.     Yes.
>
> Q.     Which you did not want and pulled back?
>
> A.     Yes.

N.T., 2/15/2018, at 77, 79.

> On redirect, the Commonwealth asked the [V]ictim to read her handwritten statement given to police following the incident into the record. N.T., 2/15/[20]18, at 89. The [V]ictim read the following questions and answers into the record.
>
> > **Q**: Did you feel violated after he kissed you without your consent?

**A**: Yes.

**Q**: Did he give you another hug before you left?

**A**: Yes.

**Q**: Did you ever tell him to stop?

**A**: I did when he was kissing me in the window of his car.

**Q:** What did he say to you?

**A**: He told me that no one has to know and no one will find out.

[***Id.***] Th[e trial c]ourt found the [V]ictim offered credible testimony establishing indecent contact, lack of consent, and forcible compulsion.

Trial Court Opinion, filed July 23, 2018, at 5-6 (some formatting).

The trial court convicted Appellant of the aforementioned charges on February 5, 2018, and sentenced him on May 23, 2018. On June 8, 2018, Appellant filed this timely direct appeal.[2]

Appellant presents the following issues for our review:

1. Was the evidence insufficient to support [Appellant]'s conviction for indecent assault - without consent pursuant to 18 Pa.C.S. § 3126(a)(1) where the Commonwealth failed to establish the [Victim] did not consent?

2. Was the evidence insufficient to support [Appellant]'s conviction for indecent assault - forcible compulsion pursuant to 18 Pa.C.S. § 3126(a)(2) where the Commonwealth failed to establish forcible compulsion?

3. Was the evidence insufficient to support [Appellant]'s conviction for harassment - physical contact pursuant to 18 Pa.C.S. § 2709(a)(1) where the Commonwealth failed to establish [Appellant] possessed the requisite specific intent?

---

[2] Appellant filed his statement of errors complained of on appeal on June 29, 2018. The trial court entered its opinion on July 23, 2018.

- 3 -

Appellant's Brief at 4 (suggested answers omitted).

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

*Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

**Indecent Assault without Consent**

Appellant first contends that the evidence was insufficient to sustain his conviction for indecent assault without consent, "where the record failed to establish the [Victim] lacked consent." Appellant's Brief at 11. According to Appellant:

> [T]he [Victim]'s testimony, when viewed in the light most favorable to the Commonwealth, did not communicate a lack of consent to [Appellant] prior to the attempted kiss. . . . The [Victim] testified that [Appellant] pulled her in the vehicle by the back of her head, however, this is contrary to surveillance tape, as the [Victim] is raising on her toes, leaning into the vehicle to hug [Appellant] again at 4 minutes, 58 seconds, before what is allegedly [Appellant]'s hand on the right side goes toward the [Appellant]'s head at 4 minutes, 59 seconds. *See* N.T., 2/15/[20]18, at 63, 77.

*Id.* at 12-13 (footnote omitted) (some formatting).

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and the person does so without the complainant's consent[.]

18 Pa.C.S. § 3126(a)(1) (some formatting).[3]

---

[3] Appellant does not contest that the evidence was sufficient to establish that he had indecent contact with the Victim. Appellant's Brief at 12 n.5.

In its analysis of the sufficiency of the evidence to support Appellant's conviction for indecent assault without consent, the trial court opinion references *Commonwealth v. Capo*, 727 A.2d 1126, 1127 (Pa. Super. 1999). Trial Court Opinion, filed July 23, 2018, at 3 n.1. Appellant contends: "The instant case is unlike *Capo*, where the defendant challenged the sufficiency of the evidence underlying conviction for indecent assault –without consent on the grounds that his actions did not fall within the statutory definition of an indecent contact[,]" while, in the current case, Appellant is challenging the element of lack of consent. Appellant's Brief at 14.

Appellant is correct that the appellant in *Capo* challenged the sufficiency of the evidence establishing indecent contact and "does not and cannot claim that his actions were performed with the victim's consent." 727 A.2d at 1127. However, although the trial court's citation to *Capo* was inapt, it is also non-dispositive of the ultimate issue – *i.e.*, whether the evidence at Appellant's trial was sufficient to establish the element of lack of consent. That is to say,

In the current action, viewing all "the evidence admitted at trial, and all reasonable inferences drawn therefrom," in the "light most favorable to the Commonwealth as verdict winner," *Izurieta*, 171 A.3d at 806, the Victim's explicit testimony that she did not want Appellant's arm around her and his tongue touching her lips while she kept her mouth closed, N.T., 2/15/2018, at 51, 79, established that the Victim did not consent to Appellant's contact. 18 Pa.C.S. § 3126(a)(1). The Victim's lack of consent was underscored by her repeated testimony that she attempted to pull away from Appellant and was prevented from doing so by him. N.T., 2/15/2018, at 51, 79. The Victim further testified that she felt "really uncomfortable," and this Court has previously found that a victim's testimony about how an appellant's acts made her feel were sufficient to establish the victim's lack of consent. *See Commonwealth v. Velez*, 51 A.3d 260, 266 (Pa. Super. 2012) ("viewing the evidence in a light most favorable to the Commonwealth," the victim's testimony that the "[a]ppellant's acts were bad" and "did not feel right" and that she was "afraid and angry at [a]ppellant" were sufficient to establish the victim's lack of consent). The Commonwealth did not need to present any additional testimony on the element of consent besides the Victim's testimony, as a victim's uncorroborated testimony alone can provide sufficient evidence to establish that a defendant is guilty of indecent assault. *See* 18 Pa.C.S.

_____

even if we ignore the entirety of footnote 1 in the trial court opinion, Trial Court Opinion, filed July 23, 2018, at 3 n.1, our affirmance of Appellant's judgment of sentence, including his conviction for indecent assault without consent, would be unaltered.

- 6 -

§ 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter."); *see also Izurieta*, 171 A.3d at 807; *Commonwealth v. Shaffer*, 763 A.2d 411, 414 (Pa. Super. 2000); *Commonwealth v. Cody*, 584 A.2d 992, 993 (Pa. Super. 1991).

Furthermore, contrary to Appellant's contention in his brief, *see* Appellant's Brief at 12, the Victim did not need to communicate her lack of consent to Appellant prior to the indecent contact. *See Izurieta*, 171 A.3d at 807 (evidence was sufficient to support the appellant's conviction for indecent assault without consent, when, after indecent contact, the victim pushed away the appellant and told him that she did not want to "do this"); *cf.* 18 Pa.C.S. § 3107 ("The alleged victim need not resist the actor in prosecutions under this chapter").

As for Appellant's argument that the trial court misconstrued the content of surveillance video and what it showed about the Victim's consent, Appellant's Brief at 13, Appellant is requesting that we "re-weigh the evidence and substitute our judgment for that of the fact-finder[,]" which we cannot and will not do. *Izurieta*, 171 A.3d at 806. "[A]ny doubts" regarding the content of the surveillance video and what it showed about the Victim's consent were "to be resolved" by the trial court as "fact-finder" and not by this Court. *Id.*

Thus, Appellant has failed to establish that the evidence was insufficient to support his conviction for indecent assault without consent. Appellant's first issue therefore is meritless.

**Indecent Assault by Forcible Compulsion**

Next, Appellant argues that the evidence was insufficient to sustain his conviction for indecent assault by forcible compulsion,[4] "where the record failed to establish forcible compulsion."[5]  Appellant's Brief at 15.[6]  Appellant continues:  "The [Victim]'s testimony that [Appellant] pulled her into the vehicle was belied by the surveillance video, which shows the [Victim] moving toward the vehicle immediately prior to [Appellant] making physical contact with her, and [the Victim]'s testimony that she was leaning into the vehicle to

_____

[4]     A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and the person does so by forcible compulsion[.]

18 Pa.C.S. § 3126(a)(2) (some formatting).

[5] "Forcible compulsion" is defined as:  "Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied."  18 Pa.C.S. § 3101.

The force necessary to establish "forcible compulsion" "need only be such as to establish lack of consent and to induce the victim to submit without additional resistance."  **Commonwealth v. Farmer**, 758 A.2d 173, 181 (Pa. Super. 2000) (citations and internal brackets omitted); **cf. Commonwealth v. Jones**, 771 A.2d 796, 799 (Pa. Super. 2001) ("force," as defined for robbery, is "that of which the victim is aware and by reason of that force, is compelled to part with his property" (citations omitted)).

[6] Again, Appellant does not contest that the evidence was sufficient to establish that he had indecent contact with the Victim.  **See** Appellant's Brief at 12 n.5; **see generally id.** at 15-17.

- 8 -

give [Appellant] another hug." *Id.* at 16 (citing N.T., 2/15/2018, at 63, 77; ***Commonwealth v. Robinson***, 817 A.2d 1153, 1158 (Pa. Super. 2003)).

By asking us to re-interpret the surveillance video in a manner contrary to the trial court, *id.*, Appellant is again requesting that we "re-weigh the evidence and substitute our judgment for that of the fact-finder[,]" which we cannot and will not do. ***Izurieta***, 171 A.3d at 806. In concluding that Appellant "had indecent contact (kissing) with the [V]ictim by forcible compulsion[,]" the trial court found, after listening to testimony and viewing the surveillance video, that "Appellant plac[ed] his hand on the back of the [V]ictim's head, pull[ed] her in through his window, and [did] not let[] her go[,]" then "tried giving her a kiss[] and told her to open her mouth." Trial Court Opinion, filed July 23, 2018, at 5-6 (citing N.T., 2/15/2018, at 47-49, 62-63). "[A]ny doubts" regarding the content of the surveillance video and what it showed about Appellant's use of force were "to be resolved" by the trial court as "fact-finder" and not by this Court. ***Izurieta***, 171 A.3d at 806. For this reason, Appellant's second issue is without merit.

### Harassment

Finally, Appellant urges this Court to conclude that the evidence was insufficient to sustain his conviction for harassment – subjects the other person to physical contact,[7] "where the record failed to establish [he]

_____

[7] Harassment – subjects the other person to physical contact is defined in its entirety as follows: "A person commits the crime of harassment when, with

possessed the requisite specific intent[,]" Appellant's Brief at 17 – *i.e.*, an "intent to harass, annoy or alarm another[.]" 18 Pa.C.S. § 2709(a)(1). Appellant continues that "the record fails to establish that [Appellant] *knew or should have known* that a gradual increase in physical contact would harass, annoy or alarm the [Victim]." Appellant's Brief at 18 (emphasis in original) (citation omitted).[8]

"An intent to harass may be inferred from the totality of the circumstances." **Commonwealth v. Cox**, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted).

_____

intent to harass, annoy or alarm another, the person strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. § 2709(a)(1) (some formatting).

[8] The trial court explained that it convicted Appellant of harassment, because "the Commonwealth established beyond a reasonable doubt, based on the totality of the circumstances, that Appellant intended to harass, annoy, or alarm the [V]ictim by subjecting her to physical contact knowing the [V]ictim was not interested in Appellant, felt uncomfortable, and repeatedly asked Appellant to let her go." Trial Court Opinion, filed July 23, 2018, at 6-7. Appellant takes umbrage with this final statement, maintaining: "contrary to the [trial] court's opinion that the [Victim] 'repeatedly asked [Appellant] to let her go', the [Victim] testified that she raised her voice and told [Appellant] to stop, once, and he did." Appellant's Brief at 18 (quoting Trial Court Opinion, filed July 23, 2018, at 7; N.T., 2/15/2018, at 77).

We note that nowhere in her testimony did the Victim state that she "told [Appellant] to stop, **once**[.]" *Id.* (emphasis added). The Victim repeatedly testified that she told Appellant to stop, but she never specified that she only made this request one time. N.T., 2/15/2018, at 77. Thus, Appellant's description of the Victim's testimony is inaccurate. Appellant's Brief at 18.

In the current appeal, pursuant to the totality of the circumstances, *Cox*, 72 A.3d at 721, the trial court could have reasonably inferred that Appellant knew the Victim was not interested in him, felt uncomfortable, and asked him to release her, and, accordingly, the court could have inferred Appellant's intent "to harass, annoy or alarm" the Victim. 18 Pa.C.S. § 2709(a)(1); *Izurieta*, 171 A.3d at 806; N.T., 2/15/2018, at 51, 77, 89; Trial Court Opinion, filed July 23, 2018, at 6-7.[9] Hence, the Commonwealth has sustained its burden of proving the challenged element of the crime, and Appellant's final issue lacks merit.

Based on the foregoing, Appellant is not entitled to relief.

Judgment of sentence affirmed.

_____

[9] Additionally, the requisite intent may be found where there is no evidence of any purpose other than the harassment, annoyance, or alarming of the Victim. *Cox*, 72 A.3d at 722 n.5. Appellant fails to suggest any other purpose for his actions or otherwise explain his actions, *see* Appellant's Brief at 17-19; although, even if he had, the trial court, as fact-finder, still could have chosen to disbelieve him and to have discerned a different intent from his actions. *See Commonwealth v. Hart*, 559 A.2d 584, 587 (Pa. Super. 1989) ("In addressing the proper interpretation of the statutory phrase 'with intent to harass,'" this Court noted that "[t]he law does not permit an actor to avoid the consequences of his conduct by disclaimers of an intent to injure or harm or offend or 'harass.' Rather, the law obliges the fact[-]finder to rely for the discernment of intent upon demonstrative manifestation of that intent." (citation omitted)).

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/22/19</u>