**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Paul ROBINSON, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 2002.
Filed Feb. 14, 2003.

Earl D. Raynor, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: KLEIN, BENDER and MONTEMURO *, JJ.

---

* Retired Justice assigned to Superior Court.

BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of robbery, aggravated assault, violation of the Uniform Firearms Act (VUFA), possessing an instrument of crime and criminal conspiracy. Appellant initially challenges the sufficiency of the evidence with respect to the convictions for aggravated assault, robbery and VUFA. Appellant further argues that the convictions were against the weight of the evidence. Lastly, Appellant asserts that the post-incident identification was insufficient to support the conviction and that trial counsel was ineffective in failing to seek suppression of the identification and in failing to call an alibi witness. We reverse the conviction for aggravated assault and vacate the judgement of sentence with respect to that offense. The remainder of the sentence is affirmed.

¶ 2 On February 28, 2000, shortly before 10:30 a.m., Tina Anderson and a friend, Aaron McGrown, went to a branch of Mellon Bank for purposes of cashing a rather large tax refund check. Ms. Anderson did not have an account with Mellon Bank and had attempted to cash the check at a check cashing shop but concluded that the shop was charging an excessive fee for the service. Mr. McGrown offered to assist Ms. Anderson in getting the check cashed. Mr. McGrown had a relationship with Mellon Bank and believed that the bank would cash Ms. Anderson's check for her if he accompanied her to the bank. Mr. McGrown proved correct and Ms. Anderson received over four thousand dollars from the bank, which she promptly placed in a backpack prior to leaving the bank with Mr. McGrown.

¶ 3 After leaving the bank and walking toward Mr. McGrown's vehicle, Ms.

Anderson noticed a few young black men peering out from behind the corner of a house. Ms. Anderson commented on her observation to Mr. McGrown and the two turned to look. Almost immediately after Ms. Anderson and Mr. McGrown turned toward the corner, three black males came from behind the corner and ran toward the pair, producing handguns as they drew near. Ms. Anderson turned and attempted to elude the one of the three that was actively pursuing her. As she was attempting to run away, Ms. Anderson felt the attacker grab her backpack and tug at it. Ms. Anderson pulled back, clutching the backpack in an effort to keep it from the would-be robber. Ms. Anderson then stumbled to the ground whereupon the assailant struck her in the back with the handgun resulting in the successful separation of the backpack from Ms. Anderson. Simultaneously, the other two assailants had accosted Mr. McGrown and were observed by Ms. Anderson to be rummaging through his pockets. The three men then fled the scene.

¶ 4 A passerby had witnessed the incident and called the police. Upon their arrival, Ms. Anderson provided a description of the assailants to the police, who then relayed that information over police radio. The information relayed via radio indicated that one of the assailants was a tall male with cornrow styled hair and a shorter male wearing a green sweatshirt. Shortly thereafter, Sergeant Glenn Katz and a Sergeant McGarry were on patrol in their police vehicle when they observed two individuals matching the descriptions they had heard over the radio at Park Avenue and Chelten, approximately eight blocks away from the scene of the robbery. The officers stopped and exited their vehicle in an effort to apprehend the suspects. The tall individual wearing cornrows ran off upon seeing police, but was successfully apprehended. The individual in the green sweatshirt, Appellant herein, was apprehended immediately. Ms. Anderson was transported to the scene where she identified Appellant as one of the participants of the robbery. She could not similarly identify the tall male with cornrows.

¶ 5 Appellant was charged with a variety of offenses relating to the incident detailed above. Appellant waived a jury trial and proceeded to a bench trial commencing on November 27, 2000. During trial, Ms. Anderson testified that she knew Appellant from prior contact and had recognized him as the robbery unfolded even though, according to Ms. Anderson, Appellant had been one of the men involving himself with Mr. McGrown and not the man that had robbed her.[1] At the conclusion of the bench trial, Appellant was adjudicated guilty of first degree robbery, first degree aggravated assault, violating the Uniform Firearms Act and criminal conspiracy. Previously a variety of charges had been *nolle prossed,* including simple assault. On April 27, 2001, Appellant was sentenced to a total term of incarceration of five to ten years.[2] The present appeal followed.

■■■ ¶ 6 Appellant first asserts that the evidence was insufficient to support a

---

1. It is also notable that Ms. Anderson did not tell the responding police officers that she knew one of the robbers.

2. Appellant was sentenced to five to ten years' imprisonment on the robbery charge. Additional sentences of five to ten years on the aggravated assault conviction, five to ten years on the criminal conspiracy charge, and two to five years on each of the VUFA and possessing an instrument of crime charges were also imposed but were ordered to run concurrent to the sentence on the robbery charge. Thus, Appellant's total sentence stood at five to ten years' incarceration.

conviction for aggravated assault. We agree.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993). Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. *Commonwealth v. Santana*, 460 Pa. 482, 333 A.2d 876 (1975). When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991).

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). However:

While reasonable inferences must be drawn in the Commonwealth's favor, **the inferences must flow from facts and circumstances proven in the record, and must be of 'such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt.'** *Commonwealth v. Clinton*, 391 Pa. 212, 219, 137 A.2d 463, 466 (1958). The trier of fact cannot base a conviction

on conjecture and speculation and a verdict which is premised on suspicion will fall even under the limited scrutiny of appellate review.

*Commonwealth v. Scott*, 409 Pa.Super. 313, 597 A.2d 1220, 1221 (1991)(end citations omitted)(emphasis added).

¶ 7 Aggravated assault is defined thusly:

### § 2702. Aggravated assault

(a) **Offense defined**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

18 Pa.C.S.A. § 2702(a)(1).[3]

¶ 8 As a perfunctory matter, it must be pointed out that since the Commonwealth's evidence places Appellant nowhere near Ms. Anderson, Appellant's conviction rests upon a theory of accomplice liability. Appellant does not attack the imposition of criminal liability as a result of the actions of an alleged accomplice, but asserts that the acts of the accomplice were insufficient to establish aggravated assault as a felony one. We would further note that since the accomplice did not actually inflict serious bodily injury upon Ms. Anderson, Appellant's conviction necessarily rests upon the factfinder's conclusion that the accomplice attempted to do so.[4] This in turn requires

---

**3.** The definition supplied refers to aggravated assault graded as a felony 1, which is the grading with which Appellant was charged.

**4.** We note that the Commonwealth seemingly concedes that Ms. Anderson did not sustain a serious bodily injury as the Commonwealth confines its argument to the proposition that the assailant "intended" to inflict such injury.

For our part, we are of the opinion that Ms. Anderson did not sustain a serious bodily injury. Ms. Anderson indicated that she experienced some back pain as a result of being struck by the assailant. However, Ms. Anderson complained of no significant impairment and did not even seek medical attention for the "injury."

that an act be taken with the intent of inflicting serious bodily injury.[5]

■ ¶ 9 Intent, of course, is a subjective element. Since no testimonial evidence or inculpatory statement was produced indicating that the assailant intended to inflict serious bodily injury, the Commonwealth must rely upon circumstantial evidence to prove the existence of the requisite intent. Although circumstances might indeed preponderate sufficiently to allow the factfinder to infer that a party acted with intent to inflict serious bodily injury, the necessity of proving a case by circumstantial evidence does not coincide with a suspension of the operable burden of proof. In other words, the Commonwealth's reliance upon circumstantial evidence is not a license for the jury or factfinder to speculate and convict upon hunches.

¶ 10 The Commonwealth asserts that the intent element was established by the use of a "heavy, blunt object to strike such a sensitive and vital part of the body." Commonwealth's Letter Brief at 5. While at first blush this assertion has a certain facial appeal, upon closer inspection, it falls apart. Indeed, the Commonwealth states "the fact that the victim was fortunate enough to avoid bodily injury, such as a broken spine or paralysis, that could have resulted from this attack in no way relieves the attacker of liability or diminishes the seriousness of his offense." Commonwealth's Letter Brief at 5. In so arguing, the Commonwealth exposes the true nature of its argument. The Commonwealth seeks to impose criminal liability upon Appellant, not for what happened, or even for what the assailant intended to have happen, but for what could possibly have happened in the worse case scenario.

¶ 11 The Commonwealth's hypothesis is essentially this: had the assailant struck Ms. Anderson in just the right way, she might have suffered serious injury, that is, a broken spine resulting in paralysis. Since this theoretically could have occurred, it must be what the assailant intended despite the fact that the victim suffered only some temporary pain and discomfort from the blow delivered and despite the fact that nothing prevented him from inflicting greater injury had he chosen to do so. The Commonwealth's primary proposition may be true. It is conceivable that the blow delivered could have resulted in serious bodily injury. However, the fact that such an occurrence could have happened—in fact, had a remote possibility of occurring—does not mean that the blow was intended to produce that result. Again, we must reiterate, since there was not an actual serious bodily injury inflicted, intent is what governs the classification of the crime committed in striking the blow. More importantly, the circumstances of the assault do not support the inference that the assailant intended to inflict greater injury than that actually inflicted.

■ ¶ 12 Generally speaking, one is presumed to intend the normal consequences of one's actions.[6] When someone

---

5. "Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887, 889 (1978).

6. "[W]e know of no proposition more consistent with human experience than the conclusion that absent circumstance to the contrary, a person intends the natural and probable consequences of his act." *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30, 36 (1976). "A well-recognized and generally accepted inference to establish state of mind is that an actor intends the natural and probable conse-

punches another, the common experience is that such a blow will deliver pain and discomfort, but, unless the deliverer of the blow is a heavyweight champ striking a vital portion of the head, there is not an expectation that death or serious injury will ensue.[7] This is not to say that serious bodily injury could not result from a punch. Under rare circumstances, death or serious injury can ensue, even when not intended. Nevertheless, while criminal liability might attach for the infliction of serious injury or death in this circumstance, it is based upon a negligent or reckless infliction of that injury, not upon intentional infliction.

¶ 13 Conversely, it is certainly understood that the firing of a gun at another is likely to inflict death or serious injury. Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death. The shooter might miss the target, or the bullet might strike something between the muzzle and the intended target or the bullet might simply graze the intended victim causing only superficial injury. In these circumstances, even though serious injury or death was not actually inflicted, it can be safely presumed the intent to inflict such injury was present because it is a common consequence of taking that action.

¶ 14 In the present case, it is notable that nothing intervened between the action taken by the assailant and the blow delivered to the victim. The victim was not wearing a flak jacket that might absorb some of the energy contained in the blow rendering it less harmful than intended. Nobody caught the assailant's hand as it was on the way toward striking Ms. Anderson thereby dissipating the energy propelling the hand. Nor did the assailant's hand or arm strike something on the way to its intended target to rob it of its force. As such, the only reasonable inference is that the blow delivered was essentially that intended to be delivered by the assailant. Commensurate with this, it follows that the probable intent of the blow was to inflict the same degree of injury as was actually inflicted.

¶ 15 Significantly, the complainant's testimony did not establish that the blow was delivered with particular viciousness.[8] Nor did the Commonwealth present evidence that the kind of blow delivered often resulted in serious injury, and common experience is not replete with incidents of people suffering spinal injury or paralysis as a result of being struck in the back with a handgun. Indeed, it is to the contrary. Athletes in many sports suffer fairly severe blows to the back without suffering serious bodily injury and accidents occur to laypersons where individuals sustain blows to the back without sustaining serious bodily injury. Thus, the conclusion of the factfinder, that the intent behind the blow was to injure much more severely

---

quences of his acts.... Where one does not verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor. Where the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct. If a deadly force is knowingly applied by the actor to the person of another, the intent to take life is as evident as if the actor stated the intent to kill at the time the force was applied." *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481, 485 (1980).

7. *See Commonwealth v. Alexander, supra* (a single punch not sufficient to establish intent to inflict serious bodily injury).

8. Ms. Anderson testified with respect to being struck: "A. He hit me in the back with the gun and he took my bag....Q. About where on your back were you hit. A. My lower part of my back. Q. Was it off to the side or on your side? A. Right on my spine." N.T. Trial, 11/27/00, at 26–27.

than that actually inflicted, is nothing more than sheer speculation. In essence, the Commonwealth seeks to ascribe to the assailant the intention to inflict not the obvious and ordinary consequences of his actions, but the extraordinary and unexpected consequences of his acts. Absent other circumstances tending to establish this intent, this is impermissible. As our Supreme Court stated in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887, 890 (1978), "[t]o accept the Commonwealth's argument in this case would be to allow an admitted simple assault to be bootstrapped up to an aggravated assault." As stated at the outset of the section, while the Commonwealth is entitled to have reasonable inferences drawn in their favor, this does not mean that they are entitled to the most favorable conception or interpretation of the facts possible, regardless of their probability of truth.

¶ 16 Additionally, the conclusion that the assailant intended to inflict serious bodily injury is wholly inconsistent with the whole of the uncontradicted evidence. The assailant had ample opportunity to inflict serious bodily injury had he actually desired to do so. He was standing over Ms. Anderson at point blank range and could have discharged the weapon at Ms. Anderson had he so desired, but did not. He could have struck Ms. Anderson in the head or delivered multiple blows to Ms. Anderson or continued striking her after she relinquished the backpack, but he did not. The fact of the matter is, Ms. Anderson was robbed, plain and simple. The clear intent of the robbers was to take Ms. Anderson's backpack, not to inflict serious bodily injury. To accomplish this, the assailant found it necessary to strike Ms. Anderson in the back. Indeed, there is no indication the blow was delivered for any purpose other than to assist in separating the backpack from Ms. Anderson's clutches. The inference most favorable to

the Commonwealth that also appears **reasonably supported** by the uncontradicted evidence is that the assailant acted with total disregard for Ms. Anderson's safety. That is, that he truly did not care whether she was injured or not. Again, while such disregard would have allowed for a conviction of aggravated assault had Ms. Anderson actually suffered serious bodily injury, she did not. As such, the evidence was insufficient to establish the commission of an aggravated assault.

■ ¶ 17 Appellant next argues that the evidence was insufficient to convict for robbery because the items taken from Ms. Anderson were not discovered on Appellant despite the fact that he was apprehended within an hour of the robbery. Appellant's argument is wholly misplaced. There is no requirement that the items taken in a theft or robbery be recovered. Viewing the evidence in a light favoring the Commonwealth as verdict winner, Ms. Anderson was accosted at gunpoint and her backpack, containing a large sum of money, was forcibly removed from her. Appellant was identified as one of the perpetrators of the crime. All the elements of a robbery are therefore established. Appellant's argument is more appropriately a weight of the evidence challenge. He essentially argues that the lack of physical evidence in conjunction with an identification that was less than convincing raises considerable doubt. In this respect, Appellant's argument may be correct. However, this is an argument directed at the weight of the evidence. The Commonwealth's evidence, if believed, is certainly sufficient to establish all the elements of the crime.

■ ¶ 18 Appellant next asserts that the evidence was insufficient to establish the VUFA offense because no firearm was recovered when he was stopped. This ar-

gument is similar to the one above and can be quickly dispelled. Ms. Anderson testified that all three attackers possessed handguns. This is all that is necessary. That no gun was found on Appellant a half-hour or more after the robbery is not dispositive of the sufficiency of the evidence. Appellant could have easily discarded the gun immediately after the robbery had been effectuated. The evidence is clearly sufficient to establish this offense.

■ ¶ 19 Appellant next levels a challenge to the weight of the evidence. However, Appellant never filed a motion for new trial or post-sentence motion challenging the weight of the evidence.[9] As such, the claim is deemed waived. *See* Pa. R.Crim.P. 607, *Commonwealth v. Butler*, 729 A.2d 1134 (Pa.Super.1999).

■ ¶ 20 Appellant also seeks review of two issues that were not included in his Pa.R.A.P. 1925 Statement of Matters Complained of on Appeal. Appellant's current counsel asserts that he was ruled to file his Rule 1925 statement the same day of his post-trial appointment to the case and that he had insufficient time to review the transcripts and case file, interview the client, who was incarcerated, and assess probable appellate issues. Appellant requests that we overlook the failure to include these issues in the 1925 statement since effective appellate review has not been hindered by the failure.

¶ 21 Prior to our Supreme Court's decision in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), we may very well have been inclined to overlook the failure to include the prospective issues in the Rule 1925 statement under the circumstances presented here and gone on to consider the issues on their merits. However, after *Lord*, there appears to be no real discretion with respect to finding waiver.[10] Consequently, we are constrained to find that the last two issues argued by Appellant are not properly before us and must be deemed waived.

¶ 22 Lastly, Appellant posits that counsel was ineffective for failing to call an alibi witness.[11] Appellant asserts that he was at the residence of Ms. Tia Fortune at the time the robbery took place and that Ms. Fortune appeared at trial ready and willing to testify to this effect but that counsel failed to call Ms. Fortune or to even interview her to determine the worth of her testimony.[12] The Commonwealth, citing *Commonwealth v. Dowling*, 778 A.2d 683 (Pa.Super.2001), contends that this issue is waived as Appellant's Rule 1925 Statement was generalized and did not provide specifics of the ineffectiveness claim, i.e., who the alibi witness was and what her testimony would have been, thereby depriving the trial court of an opportunity to meaningfully address the asserted error. Due to the Pennsylvania Supreme Court's re-

9. Nor was an oral motion made at the close of the trial.

10. We note, however, that counsel may have been entitled to assert his own ineffectiveness in failing to include the issues in the Rule 1925 Statement. *See Commonwealth v. Johnson*, 565 Pa. 51, 771 A.2d 751 (2001).

11. Appellant's counsel mistakenly asserts in the brief presented to this Court that, like the two issues referred to in the preceding segment, this issue was also omitted from the

Rule 1925 Statement filed with the trial court. In fact, this issue was included in Appellant's Rule 1925(b) Statement.

12. In support of this argument, Appellant has attached an affidavit signed by Ms. Tia Fortune indicating Appellant and another male were at her home on February 28, 2000 from 9:30 a.m. until 11:00 a.m. and that she went to Appellant's trial in anticipation of testifying but was told by court personnel she would not be called.

cent decision in *Commonwealth v. Grant,* —— Pa. ——, 813 A.2d 726 (2002), we must conclude that the Commonwealth's waiver argument is now moot and that resolution of Appellant's ineffectiveness of trial counsel issue must await another day.

■ ¶ 23 In *Grant,* our Supreme Court broke from longstanding precedent that had its origin in *Commonwealth v. Dancer,* 460 Pa. 95, 331 A.2d 435 (1975), and *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), and indicated that it was no longer necessary that ineffective assistance of trial counsel claims be raised "at the earliest stage of the proceedings at which the allegedly ineffective counsel no longer represents the defendant." *Grant,* 813 A.2d at 729. The applicable rule of law now holds that "simply stated, a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness." *Id.* at 737.

■ ¶ 24 However, in conjunction with eliminating the need to raise ineffectiveness issues on direct appeal when represented by different counsel, and for reasons set forth in detail in the *Grant* Opinion, the Court also indicated that, in most circumstances, resolution of these claims must await collateral review. Summarizing the new position, the Court states "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738. The Supreme Court further directed that the "rule we announce today" will apply to "any other cases on direct appeal." *Id.* Applying that rule in *Grant,* the Supreme Court dismissed the appellant's claims of ineffectiveness without prejudice to raise these claims, "in addition to other claims of ineffectiveness," in a first PCRA petition. *Id.* at 739. In the present case, there appears to be no reason to depart from the approach employed by the Pennsylvania Supreme Court in *Grant.*[13]

■ ¶ 25 For the above reasons, we reverse the judgment of sentence imposed upon Appellant for aggravated assault. The judgment of sentence is affirmed in all other respects.[14]

¶ 26 Judgment of sentence affirmed in part and reversed in part. Jurisdiction relinquished.

---

**13.** While the Court indicates that there may be times when an ineffectiveness claim may still be addressed on direct appeal, *see id.* at 738 n. 14, the circumstances cited as grounds for a possible exception are not present here. Nor are any of the concerns cited for imposing the new rule alleviated here. That is, the ineffectiveness issue was not presented to the trial court and resolution of the issues would require going "beyond the record" developed below and would possibly require a remand for an evidentiary hearing. As such, we see

no reason that *Grant* does not control the present case.

**14.** We note that our disposition does not upset the court's sentencing scheme as the sentence we reverse here had been ordered to run concurrent to the sentence imposed on the robbery conviction. Under these circumstances, there is no need to remand for resentencing. *See Commonwealth v. Mastromatteo,* 719 A.2d 1081 (Pa.Super.1998), and *Commonwealth v. Mosley,* 401 Pa.Super. 537, 585 A.2d 1057 (1991).