J-S04016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CORY JOSEPH SULLIVAN | : | |
| | : | |
| Appellant | : | No. 988 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 10, 2023
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0000249-2020

BEFORE: BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:            **FILED AUGUST 9, 2024**

Appellant, Cory Joseph Sullivan, appeals from his judgment of sentence of imprisonment for multiple crimes against his fiancé, J.S., and their children, including (1) aggravated assault, graded as a first-degree felony, for causing serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life (18 Pa.C.S.A. § 2702(a)(1)), (2) ten counts of aggravated assault for causing bodily injury with a deadly weapon, graded as second-degree felonies (18 Pa.C.S.A. § 2702(a)(4)), (3) strangulation, (4) indecent assault, (5) five counts of endangering welfare of children, (6) corruption of minors, (7) furnishing liquors to minors, and (8) terroristic threats. The court originally sentenced Appellant to an aggregate sentence of 219 – 420 months' imprisonment. The Commonwealth filed a post-sentence motion requesting a longer sentence, and the court resentenced Appellant to 222 – 444 months' (18.5 to 37 years') imprisonment.

We reverse five of Appellant's convictions under 18 Pa.C.S.A. § 2702(a)(4) due to insufficient evidence, and we affirm his remaining convictions. In addition, we remand for imposition of Appellant's original sentence, because the court resentenced Appellant after expiration of the time limit for disposing of the Commonwealth's post-sentence motion under Pa.R.Crim.P. 721.

The evidence adduced during Appellant's jury trial reveals that he lived with (1) his fiancé, J.S., (2) their five children, whose ages ranged from six years old to four months old at the time of Appellant's arrest, and (3) A.H.A., a child from J.S.'s previous marriage. The Commonwealth presented evidence that Appellant engaged in a prolonged pattern of physical abuse against J.S. and the children for years, culminating in J.S.'s hospitalization in December 2019. We do not find it necessary to recite every detail of Appellant's appalling conduct; a few details will suffice.

J.S. testified that she began dating Appellant in 2012. Appellant began abusing her physically in 2016 when she was pregnant with one of their children, C.S., and she went into premature labor after Appellant threw her onto a bed. In 2017, during another pregnancy, Appellant repeatedly threw her to the floor, spat on her, pulled her hair, and verbally abused her. After their second child was born, Appellant's physical abuse increased in frequency and severity. J.S. estimated that Appellant beat her once every week, often by choking her and throwing her to the ground.

J.S. testified that Appellant choked her with a belt around her neck and hit her in the head with a studded belt. She testified that there were cuts and

marks on her face and head from Appellant repeatedly striking her with the belt. On more than one occasion, Appellant forced her to take her clothes off, poured water on her and forced her to stay outside in the cold until he allowed her to come inside. Appellant also forced A.H.A. to stand outside naked as punishment.

J.S. and A.H.A. both testified about the physical abuse that Appellant inflicted on the children, including frequent beatings with a leather work belt. Appellant also used a studded belt to beat A.H.A. and J.S. The Commonwealth introduced photographs showing wounds that J.S. suffered on many parts of her body from the beatings, including her face.

As an alternative to the beatings, Appellant ordered J.S. and A.H.A. to drink shots of alcohol within thirty seconds and made them continue to drink until they either blacked out or vomited.

Appellant repeatedly threatened to kill J.S. and all the children if the police were ever called or if they ever told anyone what happened in the house. He also threatened that if they left, he would have people find them and kill them.

On December 23, 2019, J.S. brought her vehicle to receive service at a Mavis Tire store. A Mavis employee noticed that J.S. had injuries and called the police to report his concern for her welfare. Pennsylvania State Troopers visited the store to speak with J.S. When they observed her injuries, they called for an ambulance, photographed her injuries, and sent her to the hospital. J.S. reported that earlier that morning, Appellant beat her about her

head, arms, legs, and torso with a painter's pole. J.S. also stated that Appellant had been abusing her and many of her children for a long time.

On January 17, 2020, the police filed a multitude of charges against Appellant. J.S. gave searing and graphic testimony during trial concerning the abuse and humiliation inflicted upon her by Appellant, and she authenticated dozens of photographs depicting the wounds that Appellant inflicted during regular savage beatings on her head, face, torso, arms, and legs.

On March 7, 2022, a jury found Appellant guilty of the charges identified above. On June 13, 2022, the court sentenced Appellant to an aggregate sentence of 219 – 420 months' imprisonment. On June 22, 2022, the Commonwealth filed a timely post-sentence motion seeking an increased sentence. On July 14, 2022, Appellant filed post-sentence motions. On October 20, 2022, the court (1) granted the Commonwealth's motion to increase Appellant's sentence, (2) granted Appellant's post-sentence motions to the extent that resentencing was necessary because he was not present in person, and (3) denied the remainder of Appellant's post-sentence motions. Over four months later, in an order docketed on February 15, 2023, the court resentenced Appellant to 222 – 444 months' (18.5 to 37 years') imprisonment. On February 21, 2023, Appellant filed post-sentence motions seeking reconsideration of this new sentence. On March 8, 2023, the court denied Appellant's motion. On April 7, 2023, Appellant appealed to this Court. Appellant complied with Pa.R.A.P. 1925. The court did not file a Rule 1925(a)

opinion, but it addressed the issues raised on appeal in its October 20, 2022 opinion and order concerning the parties' post-sentence motions.

Appellant raises the following issues in this appeal, which we re-order for the sake of convenience:

> 1. Did the trial court err by permitting the Commonwealth to introduce video evidence provided to the Commonwealth immediately before the trial began, thereby preventing the defense from investigating the video to determine its authenticity or context and preventing the defense from developing any strategy to address the video evidence?
>
> 2. Did the trial court err by precluding the defense from questioning two witnesses regarding [J.S.'s] statements about relationships she had prior to her relationship with [Appellant], which demonstrate [J.S.'s] propensity for alleging abuse?
>
> 3. Are [Appellant's] convictions for aggravated assault with the use of a deadly weapon as it is related to the belt not supported by sufficient evidence because the Commonwealth failed to prove that serious or permanent disfigurement or protracted loss or impairment of any bodily member or organ occurred because of [Appellant's] use of the belt?

Appellant's Brief at 3.

Appellant first argues that the Commonwealth violated his due process rights articulated in **Brady v. Maryland**, 373 U.S. 83 (1967), by turning over a video one day before trial to Appellant. The video, filmed by Appellant, showed J.S. sleeping on a couch while he was groping her private areas. This argument is devoid of merit.

J.S. testified that she was unaware of the video in question until one day before trial, when she discovered it in her cloud account. Upon finding it,

she immediately forwarded it to the District Attorney. The Commonwealth itself only became aware of the video on the eve of trial. Appellant admits that the Commonwealth promptly produced the video to him after receiving it from J.S.

Appellant does not contend that the Commonwealth violated his rights under the rule of criminal procedure relating to discovery, Pa.R.Crim.P. 573. Instead, Appellant argues that the disclosure of the video immediately before trial violated his rights under **Brady** because it deprived him of the opportunity to investigate its authenticity or develop a trial strategy relating to the video. Appellant also complains that admission of the video prejudiced him because the Commonwealth used it "as a piece of an overarching picture of [Appellant] as a disruptive and abusive presence in the home [he] shared with [J.S.] and their children." Appellant's Brief at 9.

Appellant's argument fails because there was no **Brady** violation. In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Id.** at 87. To prove a *Brady* violation, the defendant has the burden of demonstrating that: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." **Commonwealth v. Carson**, 913

A.2d 220, 244 (Pa. 2007). Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. *Id.* Further, "[f]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011).

Here, Appellant fails to meet his burden to demonstrate a *Brady* violation under the test enunciated in *Carson*. He fails to show that the Commonwealth suppressed the video. To the contrary, the Commonwealth turned the video over to Appellant before trial immediately after J.S. sent it to the District Attorney. Further, Appellant fails to demonstrate that the video was favorable to him. To the contrary, the Commonwealth used it in its closing argument to demonstrate Appellant's abusive nature. Finally, he fails to prove that suppression of the video prejudiced him, because, as discussed above, there was no suppression. Accordingly, this argument does not warrant relief.

Next, Appellant argues that the court abused its discretion in precluding testimony by Beau Sullivan, Appellant's older brother, and Ashley Sullivan, Beau's wife, concerning why J.S. ended her relationship with her former husband, Ryan Acevedo. Appellant claims that this testimony would have demonstrated J.S.'s propensity to fabricate false allegations of physical abuse

against her romantic partners. We conclude that the court acted within its discretion[1] by precluding this testimony, since Acevedo himself testified as to why his relationship with J.S. ended, and further testimony on this subject by Beau and Ashley Sullivan would have been cumulative.

Pennsylvania Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following . . . needlessly presenting cumulative evidence." Pa.R.E. 403. In this case, Acevedo testified as to why his relationship ended with J.S. According to Acevedo, J.S. filed a Protection From Abuse petition against him at the end of their marriage even though he made no threats against her and did not harm her physically. N.T., 3/3/22, at 192-93. Since Acevedo testified on this subject, the court acted within its discretion by determining that testimony by Beau and Ashley Sullivan on the same subject would have been cumulative.

Appellant argues that "[t]he testimony which would have been elicited from Beau and Ashley Sullivan would have provided details as to what exactly [J.S.] alleged against [] Acevedo to receive the PFA, as [] Acevedo himself testified that there had been no physical abuse." Appellant's Brief at 17. Appellant's brief does not specify what these "details" would have been; nor

---

[1] The admission of evidence is a matter for the discretion of the trial court, and we will reverse a ruling thereon only upon a showing that the trial court committed an abuse of discretion. *Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012).

does he point to any place in the record where he made an offer of proof concerning these "details." Therefore, we have no basis to conclude that these "details" would have affected our review of the trial court's ruling.

Finally, Appellant contends that the evidence was insufficient to sustain multiple convictions for aggravated assault with a deadly weapon under 18 Pa.C.S.A. § 2702(a)(4) because the belt that he used to beat J.S. did not constitute a deadly weapon. We hold that the evidence was sufficient to sustain four of Appellant's nine convictions under Section 2702(a)(4) involving use of the belt.[2] The evidence was insufficient to sustain Appellant's other five convictions under Section 2702(a)(4) despite the brutality of his conduct.

In reviewing a challenge to the sufficiency of the evidence,

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter

---

[2] One other conviction under Section 2702(a)(4) arose from Appellant's use of a painter's pole as a deadly weapon. Appellant does not challenge the sufficiency of the evidence concerning this conviction.

of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Izurieta*, 171 A.3d 803, 806 (Pa. Super. 2017).

To prove aggravated assault with a deadly weapon, the Commonwealth must prove that the defendant "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. §2702(a)(4). The Crimes Code defines a deadly weapon as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301. The Crimes Code also defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

"The definition of deadly weapon does not demand that the person in control of the object intended to injure or kill the victim. Instead, it gives objects deadly weapon status on the basis of their use under the circumstances." *Commonwealth v. Scullin*, 607 A.2d 750, 753 (Pa. Super. 1992) (tire iron thrown at victim was deadly weapon); *see also Commonwealth v. Cornish*, 589 A.2d 718, 721 (Pa. Super. 1991) (fireplace poker used to strike victim constituted deadly weapon).

Counts 5 through 13 in the amended information alleged violations of Section 2702(a)(4) through use of a belt as a deadly weapon. The pertinent evidence for these counts comes from J.S.'s trial testimony and Commonwealth's exhibit sixteen, which consists of contemporaneous pictures that J.S. took of her injuries and which she emailed to herself. N.T. Jury Trial, 3/3/22, at 119-20 (explaining Exhibit 16).

Count 5 concerned an incident on September 16, 2019, when Appellant struck J.S. across the face, back of the head, arms, buttocks, and legs with the belt and belt buckle. *Id*. at 123-28. Pictures capturing J.S.'s injuries showed bruising around her eyes and on her shoulders, buttocks, and legs. *Id*. at 127-28 (Exhibit 16 at 7-8, 10-11).

Count 6 charged Appellant with striking J.S. with the belt buckle on September 25, 2019, causing bruising on the top of her head, back, and breast. *Id*. at 130-31. He also hit her with the belt on the back, stomach, arm, buttocks, and legs, causing bruising and a swollen elbow. *Id*. at 129-32; *see also id*. at 128-35 (Exhibit 16 at 13-14). Appellant inflicted these wounds while J.S. was naked, approximately one month after she had given birth. *Id*. at 132, 135.

Count 7 concerns Appellant's attack on J.S. on October 23, 2019. Pictures from that date depict severe bruising to J.S.'s back, legs, and foot. *Id*. at 137-39 (Exhibit 16 at 18-19). In this instance, Appellant beat J.S. with the belt so brutally that her ankle became "swollen up" and the belt buckle

"put a hole in [her] leg." *Id*. at 138-39 (Exhibit 16 at 18-19). He even "started hitting [her] in the vagina area, in the inner thighs, because it hurt more." *Id*. at 138.

Count 8 concerns a beating on November 14, 2019. The photographs from that date portray intense injuries to J.S.'s torso, abdomen, shoulder, breasts, back, legs, hips, and buttocks. *Id*. at 150-54 (Exhibit 16 at 23-24). J.S. testified that Appellant "purposely hit [her] across the chest while [she] was breastfeeding[,]" causing her "milk to be low." *Id*. at 151. He also struck her with the belt buckle, which caused "bigger and worse bruising." *Id*. at 153.

Count 9 pertains to a beating on November 20, 2019. The pictures from this date reveal bruising to J.S.'s back, abdomen, and buttocks. *Id*. at 154-57 (Exhibit 16 at 26). During this violent episode, Appellant "hit [J.S.] on the stomach with the belt on bare skin." *Id*. at 155.

On November 28, 2019, the date relating to count 10, Appellant utilized the belt in three different ways. He hit J.S. with the belt buckle on the arm and shoulder, causing scars, as well as on her legs. He also whipped her on the head, neck, back, breast, stomach, legs, buttocks, and vagina, causing severe bruising. Finally, he used it to choke her. *Id*. at 158-64; *see also id*. (Exhibit 16 at 30-31).

Count 11 charged Appellant for a beating of J.S. in April 2019.[3] Photographs taken afterwards show injuries to her legs, thighs, hips, back, and arms. *Id*. at 165-66 (Exhibit 16 at 35). At this time, J.S. was five months pregnant, and Appellant knew this fact yet continued the abuse. She testified that Appellant "sometimes missed and hit her stomach." *Id*. at 165.

Count 12 involved an incident on July 24, 2019. The evidence from this day shows bruising on J.S.'s buttocks resulting from Appellant's beating with the belt. *Id*. at 167-68 (Exhibit 16 at 41). At this point, J.S. was nine months pregnant. *Id*. at 168.

Finally, count 13 concerned Appellant's beating of J.S. on July 31, 2019, again during the ninth month of her pregnancy. On this occasion, Appellant struck her with the belt on the face, buttocks, and legs. *Id*. at 168-69 (Exhibit 16 at 43). J.S. testified that, "at this point [in her pregnancy], [Appellant] was no longer focusing on [her] body. He was focusing on her [head], because [she] was close to delivery and he didn't want markings on [her] body." *Id*. at 168.

The evidence was sufficient to sustain Appellant's convictions on Count 5 (use of the belt on September 16, 2019), Count 6 (September 25, 2019), Count 10 (November 28, 2019) and Count 13 (July 31, 2019). The evidence demonstrates that Appellant used a studded belt on these dates either to

_____

[3] While the information stated that the beating took place on April 4, 2019, the discovery and trial evidence instead pertained to April 18, 2019. Appellant raised no objection to the variance in either the trial court or this Court.

choke J.S. or to strike her violently and repeatedly on her head and face. The belt constituted a deadly weapon on these occasions because it caused serious bodily injury, *i.e.*, "bodily injury which creates a substantial risk of death." 18 Pa.C.S.A. § 2301.

The evidence, however, is insufficient to sustain Appellant's other five convictions in Counts 7-9 and 11-12, which concern beatings on J.S.'s legs, buttocks and stomach.

We reach this decision despite the fact the stomach and torso are vital parts of the body. *See Commonwealth v. Haney*, 131 A.3d 24, 36 (Pa. 2015) (defendant's repeated attacks on four-year-old victim, "during which he inflicted blows to vital parts of [victim]'s body, such as his head and stomach, over a period of at least three days," along with a refusal to seek medical attention, proved malice and specific intent to kill); *Commonwealth v. Comerford*, 313 A.3d 194, 2024 WL 223253, at *4 (Pa. Super. 2024) (non-precedential decision) (evidence sufficient to sustain defendant's conviction for aggravated assault with deadly weapon where he struck victim with frying pan multiple times in torso, "a 'vital' part of the body"). Moreover, we have upheld convictions for aggravated assault with a deadly weapon where the defendants repeatedly struck their victims with heavy metal objects on the torso and back. *See Comerford*, 2024 WL 223253, at *4; *Commonwealth v. Sun*, 268 A.3d 401, 2021 WL 5121282, at *3 (Pa. Super. 2021) (non-precedential decision) (determining aluminum bat was a deadly weapon where the defendant "used the bat to hit his wife in the back – an area of the body

in which he could easily have caused serious injury to her spine, kidneys, and other body parts").

Nevertheless, the way Appellant used the belt on J.S.'s legs, buttocks and stomach was not likely to cause death or serious bodily injury, as defined by our legislature. *See Scullin*, 607 A.2d at 753. Instead, Appellant intended his actions to cause extreme pain and resulted in bodily injury to J.S., including while she was five months and nine months along in her pregnancy. However, whipping the belt, while unquestionably repulsive and pain-inducing, was simply not calculated to inflict the same types of injuries as the blunt force of a heavy metal object to the stomach, torso, or back. Moreover, Appellant did not focus on strangling J.S. or beating her in the head during these attacks. Nor was there testimony regarding a substantial risk of death, permanent disfigurement or protracted loss or impairment resulting from the beatings at issue in counts 7, 9, 11 and 12.

With regard to count 8, J.S. attested that Appellant purposefully struck her in the breasts to limit her breastmilk supply, and that his assault actually resulted in such a reduction. The Commonwealth, however, proffered no evidence as to the duration of this injury. Thus, it did not establish that the beating caused "protracted loss or impairment" of her breastmilk production. *See* 18 Pa.C.S. § 2301. *Cf. Commonwealth v. Cassidy*, 668 A.2d 1143, 1146 (Pa. Super. 1995) (impairment protracted where victim had to wear brace "from the top of the chest to the thighs, covering the front and back, and a cast which immobilize[d] movement of the wrist, both for two months").

- 15 -

Before concluding, we address two issues relating to further proceedings in this case. The first is whether Appellant's resentencing was a nullity because it was untimely under Pa.R.Crim.P. 721, the rule governing post-sentence motions filed by the Commonwealth. We answer this question in the affirmative, and we remand for reinstatement of Appellant's original sentence. Second, we consider whether a new sentencing hearing is necessary due to our reversal of Appellant's six convictions under Section 2702(a)(4). We conclude that a new sentencing hearing is not necessary because reversal of these convictions does not affect the structure of Appellant's original sentence.

The question whether the trial court timely resentenced Appellant under Rule 721 is a jurisdictional issue. *Commonwealth v. Martinez*, 141 A.3d 485, 487, 490 (Pa. Super. 2016) (trial court lacked jurisdiction to resentence defendant due to failure to impose new sentence within time limits prescribed under Pa.R.Crim.P. 721). Although neither party raised this issue, we may raise jurisdictional questions *sua sponte*. *Commonwealth v. Parker*, 173 A.3d 294, 296 (Pa. Super. 2017).

Rule 721 sets forth the procedure for Commonwealth challenges to a defendant's sentence:

**(A) Commonwealth Challenges to Sentence**

(1) The Commonwealth may challenge a sentence by filing a motion to modify sentence, by filing an appeal on a preserved issue, or by filing a motion to modify sentence followed by an appeal.

* * *

- 16 -

**(B) Timing**

(1) *Motion for Modification of Sentence.* A Commonwealth motion for modification of sentence shall be filed no later than 10 days after imposition of sentence.

\* \* \*

**(C) Trial Court Action; Disposition.** If the attorney for the Commonwealth files a timely motion for modification of sentence pursuant to paragraph (A)(1), the judge shall dispose of the motion as provided in this paragraph.

(1) If the defendant has filed a post-sentence motion, the judge shall not vacate sentence but shall decide the Commonwealth's motion and the defendant's post-sentence motion simultaneously. The Rule 720(B)(3) time limits for deciding the defendant's post-sentence motion,[4] including the automatic denial provisions, shall apply to the disposition of the Commonwealth's motion. The starting date for disposition of both motions shall be the date on which the defendant filed the post-sentence motion.

(2) If the defendant has not filed a post-sentence motion, the judge shall not vacate sentence but shall decide the Commonwealth's motion within 120 days of the filing of the motion. If the judge fails to decide the Commonwealth's motion within 120 days, the motion shall be deemed denied by operation of law.

Pa.R.Crim.P. 721.

The Comment to Rule 721 provides, in relevant part, as follows:

---

[4] Pa.R.Crim.P. 720(B)(3) provides that the judge shall decide the defendant's post-sentence motion within 120 days of the filing of the motion. Pa.R.Crim.P. 720(B)(3)(a). Upon motion of the defendant within the 120-day period and good cause, the judge may grant one thirty-day extension for decision on the motion. Pa.R.Crim.P. 720(B)(3)(b). If the judge fails to decide the defendant's post-sentence motion within these time limits, the motion shall be deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a-b). Presently, after filing his post-sentence motions, Appellant did not request any extension for decision on the motions.

*Rule 720 Motion Filed*

Under paragraph (C)(1), if the defendant has filed a post-sentence motion, the judge is not permitted to vacate sentence and must decide the defendant's post-sentence motion and the Commonwealth's motion simultaneously. The date on which the defendant's post-sentence motion is filed, see Rule 720(A)(1), triggers the time limit within which the judge must also dispose of the Commonwealth's motion, regardless of which motion is filed first. If the judge fails to decide the Commonwealth's motion within this time limit, the motion is deemed denied by operation of law. *See* Rule 720(B)(3).

*Rule 720 Motion Not Filed*

When the defendant has not filed a post-sentence motion, the disposition of the Commonwealth's motion is governed by paragraph (C)(2). The judge may not vacate sentence, but has 120 days to decide the Commonwealth's motion or the motion is deemed denied by operation of law. If the judge decides the motion within the 120-day limit and then agrees to reconsider, the reconsideration must be resolved within the original 120-day time limit. The judge may not vacate sentence in order to reconsider the motion or otherwise use the reconsideration period to extend the 120-day time limit . . .

Comment, Pa.R.Crim.P. 721.

This Court's analysis of Rule 721 in **Martinez** is instructive. There, the court sentenced the defendant on November 13, 2012, to a term of imprisonment for robbery and other offenses. On November 19, 2012, the Commonwealth filed a timely post-sentence motion requesting application of the deadly weapon enhancement to the defendant's sentence. On January 16, 2013, the court granted the Commonwealth's post-sentence motion and ordered resentencing. On April 5, 2013, over 120 days after the Commonwealth filed its post-sentence motion, the court vacated the defendant's original sentence and imposed a lengthier term of imprisonment.

On direct appeal, we held that the court lacked jurisdiction to resentence the defendant beyond the 120 day limit set forth in Rule 721, and we remanded for reinstatement of the original sentence. We reasoned:

While Pa.R.Crim.P. 721(C)(2) provides that the trial court must "**decide** the Commonwealth's motion within 120 days of the filing of the motion", the Comment to Rule 721 makes clear that not only does the trial court need to decide the Commonwealth's post-sentence motion within the 120 day period, but the trial [court] must **resolve** the motion for reconsideration within the original 120–day time limit.

* * * *

In the case *sub judice,* the Commonwealth filed its post-sentence motion on November 19, 2012. Accordingly, the 120–day time period during which the trial court had authority to act upon the post-sentence motion expired on March 19, 2013. Thus, the trial court was required to entirely resolve the Commonwealth's post-sentence motion by March 19, 2013. As stated, the trial court did not vacate Appellant's original sentence or resentence Appellant until April 5, 2013, which was 137 days after the Commonwealth filed its post-sentence motion. Because the trial court did not resolve the Commonwealth's post-sentence motion within the original 120–day time limit, the post-sentence motion was denied by operation of law on March 19, 2013, pursuant to Pa.R.Crim.P. 721(C)(2). Accordingly, the trial court lacked jurisdiction to vacate Appellant's original sentence and resentence Appellant on April 5, 2013. "Where there is no jurisdiction, there is no authority to pronounce judgment." [**Commonwealth v.**] **Santone**, 757 A.2d [963,] 966 [(Pa. Super. 2000)].

*Id.* at 488-89, 490-91 (emphasis in original).

Here, as in **Martinez**, the trial court granted the Commonwealth's motion for reconsideration on October 20, 2022, within the 120 day period prescribed under Rule 721, but failed to resentence Appellant until February 10, 2023, after the 120 day period expired. Thus, as in **Martinez**, the trial court lacked jurisdiction to resentence Appellant by failing to "resolve the

motion for reconsideration within the 120 day period."[5]   ***Id.*** at 488-89.

Further, as in ***Martinez***, "where there is no jurisdiction, there is no authority

to pronounce judgment."  ***Id.*** at 490-91.  Consequently, we must remand this

case for reinstatement of Appellant's original sentence.[6]

_____

[5] The only difference between ***Martinez*** and the present case is that the defendant in ***Martinez*** did not file post-sentence motions, while Appellant filed post-sentence motions in the present case.  Appellant's post-sentence motions appear to be untimely, since Pa.R.Crim.P. 720(A) requires the defendant to file post-sentence motions within ten days after sentencing.  Rule 721(C)(1) states that when both the Commonwealth and the defendant file post-sentence motions, the 120 day disposition period for both motions begins to run on the date of the defendant's motion.  We know of no decision, however, that addresses whether this rule applies when, as here, the defendant's post-sentence motions are untimely under Rule 720(A).  We need not resolve this issue, however, because regardless of whether the 120 day period began on the date of the Commonwealth's motions (June 20, 2022) or Appellant's motions (July 14, 2022), the court did not resentence Appellant until after this period expired.

[6] It also bears mention that Appellant's appeal to this Court was timely under the circumstances of this case.  As discussed above, the court was required to resolve the Commonwealth's post-sentence motion either by late October 2022 or mid-November 2022, depending on whether the 120 day period began running on the date of the Commonwealth's motion or Appellant's motion.  Instead of fully resolving the Commonwealth's motion within the 120 day period, the court granted a new sentencing hearing on October 20, 2022 and filed an order resentencing Appellant on February 15, 2023.  On February 21, 2023, Appellant filed post-sentence motions.  The court denied these motions on March 8, 2023 and Appellant appealed to this Court on April 7, 2023.

In cases arising under Rule 720, we have held that a breakdown in the operations of the court occurs when the trial court and clerk of court fail to enter an order denying a defendant's post-sentence motion within the 120 day period.  ***See***, ***e.g.***, ***Commonwealth v. Braykovich***, 664 A.2d 133, 137-38 (Pa. Super. 1995).  In our view, a breakdown also occurred here, since the court failed to resentence the defendant until after the 120 day period prescribed in Rule 721.  Under these circumstances, we cannot fault Appellant

*(Footnote Continued Next Page)*

- 20 -

Finally, our decision to reverse five of Appellant's ten convictions under Section 2702(a)(4) does not necessitate a new sentencing hearing because reversal of these convictions did not upset the court's sentencing scheme. When a trial court errs in its sentence on one count in a multi-count case, "then all sentences for all counts will be vacated, so that the court can restructure its entire sentencing scheme." *Commonwealth v. Bartrug*, 732 A.2d 1287, 1289 (Pa. Super. 1999). However, where vacating one sentence does not upset the trial court's sentencing scheme, there is no need to remand for resentencing. *Commonwealth v. Robinson*, 817 A.2d 1153, 1163 n.14 (Pa. Super. 2003) (declining to remand for resentencing where reversal of one sentence did not "upset the court's sentencing scheme[,] as the sentence we reverse here had been ordered to run concurrent to the sentence imposed on the [other] conviction"). During Appellant's original sentencing hearing, the court ordered the sentences we reverse today to run concurrent to other aggravated assault sentences that continue to remain intact.

Judgment of sentence on Counts 7-9 and 11-12 reversed. All other convictions affirmed. Case remanded for reinstatement of Appellant's original judgment of sentence. Jurisdiction relinquished.

_____

for filing post-sentence motions within ten days of the new sentence and filing his notice of appeal within thirty days after denial of his post-sentence motions.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/9/2024