J-A16033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTELL WILLIAMS | : | |
| | : | |
| Appellant | : | No. 848 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 14, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002602-2021

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: OCTOBER 9, 2024**

Martell Williams appeals from the judgment of sentence entered following his convictions for persons not to possess firearms, firearms not to be carried without a license, aggravated assault, simple assault, recklessly endangering another person, and criminal mischief.[1] He challenges the sufficiency of the evidence supporting his aggravated assault conviction. We affirm.

Williams was arrested following a shooting outside a bar called Doug's Den. He proceeded to a bench trial. The trial court summarized the evidence presented at trial as follows:

> On March 10, 2021, Adejah Martin testified that she was
> at a bar named Doug's Den in Carrick along with two other

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 2702(a)(4), 2701(a)(3), 2705, and 3304(a)(5), respectively.

females, Jasmine Goodnight and Deja.[2] She was sitting at the bar with Jasmine when [Williams], who was unknown to Martin, approached. Martin, who identified [Williams] at trial, explained that he spoke with Jasmine for about ten minutes, during which time a gun was visible in his waistband. [Williams] eventually walked to the end of the bar and began a conversation with Deja. Upon returning to where Martin and Jasmine were seated, [Williams] asked Martin if he could buy her a drink. She declined. It was at this time that [Williams] exposed the gun to Martin by lifting up his shirt. She testified that the gun was black in color and that the handle and trigger were exposed. Martin confronted [Williams] about displaying the gun and a verbal altercation ensued for about ten minutes and then Martin left the bar. Martin proceeded to her car parked across the street in a business parking lot. After entering her car, Martin looked up to discover that [Williams] was standing in front of her car with a gun pointed in her direction. [Williams] said something to her at the time, but she could not recall his words. Martin responded by telling [Williams] she was not afraid and drove away, which re-positioned [Williams] behind her vehicle. As she drove from the parking lot, she heard a gunshot but did not see [Williams] fire the gun. The next day, Martin reported the incident to police upon seeing a bullet hole in the right bumper of her car. Officer Jacob Forsythe with the city of Pittsburgh Police Department took the report on March 11, 2021 and observed what appeared to be a bullet hole to the rear passenger side of Martin's vehicle.

City of Pittsburgh Police Detective Andrew Robinson conducted an investigation regarding the incident at Doug's Den on March 10, 2021. As part of his investigation, he obtained security camera footage from inside Doug's Den. This footage was played at trial. The video was approximately thirty-seven minutes long and captured the front area of the bar where Martin was seated and shows [Williams] moving about the bar. Detective Robinson testified that he is familiar with [Williams] and identified him by both his facial hair and distinguishing tattoos. The footage from inside the bar showed [Williams] at various times in possession of a dark colored firearm visible both

_____

[2] Deja's last name is not in the record.

within his waistband and in his hand. Upon exiting the bar, an outside camera captured Martin as she crossed the street to her car followed by [Williams] twenty-six seconds later. The angle of the security camera did not capture the parking lot where Martin's car was, thus, the next event captured was when Martin drove away approximately thirty seconds later. Through stipulation it was established that [Williams] had a prior conviction for Possession with Intent to Deliver.

Trial Court Opinion, filed Oct. 12, 2023, at 3-4 (internal citations and footnotes omitted).

The trial court convicted Williams of possession of a firearm prohibited, carrying a firearm without a license, aggravated assault, simple assault, recklessly endangering another person, and criminal mischief. It sentenced Williams to seven and a half to 15 years' incarceration. Williams filed a timely notice of appeal.

Williams raises the following issue:

Was the evidence insufficient to sustain the conviction at Count 2 – aggravated assault because the Commonwealth did not prove, beyond a reasonable doubt, that Mr. Williams attempted to cause or intentionally or knowingly caused bodily injury?

Williams's Br. at 5 (unnecessary capitalization omitted).

Williams argues the Commonwealth did not present sufficient evidence to sustain the aggravated assault conviction. He claims it did not establish beyond a reasonable doubt that Williams attempted to cause bodily injury when he fired one gunshot that hit the rear, passenger-side bumper of the car. He notes that the bullet did not enter the car's passenger compartment and Martin was not injured. Williams claims he did not shoot at or physically

assault Martin despite having the opportunity to do so. He further points out that there was no testimony regarding the distance that he stood from the car when he fired the shot. Williams states that Martin was not hurt and did not notice the bullet hole until the following day. He further notes that Martin did not remember what Williams said to her and did not testify that he had threatened her. He argues that one bullet fired at the rear bumper does not show intent to cause bodily injury when it did not enter the passenger compartment of the car.

Williams relies on **Commonwealth v. Robinson**, 817 A.2d 1153 (Pa.Super. 2003), where this Court found that striking a woman one time on her back was not sufficient to prove the defendant intended to cause serious bodily injury. Williams claims injury to Martin here would have been a "worst case scenario" and an "extraordinary and unexpected consequence," not an "obvious and ordinary" consequence. Williams' Br. at 12.

Williams acknowledges courts have held that firing a gunshot inside a passenger compartment can establish intent to commit aggravated assault when other circumstances help show *mens rea*. He emphasizes that here he did not fire inside the passenger compartment, and contends that the surrounding circumstances show he wanted to harass, annoy, or scare Martin, not harm her.

An individual is guilty of aggravated assault with a deadly weapon if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4).

In **Robinson**, while attempting to steal a backpack, a co-defendant struck the victim in the back with a handgun, resulting in the backpack separating from the victim. 817 A.2d at 1157. This Court found the evidence insufficient to support the aggravated assault conviction. **Id.** at 1161. The subsection charged there required a finding that the defendant attempted to cause serious bodily injury or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to human life. This Court rejected the Commonwealth's argument "that the intent element was established by the use of a 'heavy, blunt object to strike such a sensitive and vital part of the body.'" **Id.** at 1159. The Court explained that "[t]he Commonwealth s[ought] to impose criminal liability upon [the a]ppellant, not for what happened, or even for what the assailant intended to have happen, but for what could possibly have happened in the worst case scenario." **Id.** We noted that the testimony did not establish that the blow was delivered with "particular viciousness" or that it was the kind of blow that often resulted in serious bodily injury. We observed that "common experience is not replete with incidents of people suffering spinal injury or paralysis as a result of being struck in the back with a handgun." **Id.** at 1160.

We then contrasted the strike inflicted there with the firing of a gun:

> [I]t is certainly understood that the firing of a gun at another is likely to inflict death or serious injury. Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death. The shooter might miss the target, or the bullet might strike something between the muzzle and the intended target or the bullet might simply graze the intended victim causing

only superficial injury. In these circumstances, even though serious injury or death was not actually inflicted, it can be safely presumed the intent to inflict such injury was present because it is a common consequence of taking that action.

*Id.* This Court has held that where a defendant fires a weapon into an occupied house or vehicle a fact finder is "entitled, although not required, to find the necessary intent to support an aggravated assault charge." ***Commonwealth v. Woods***, 710 A.2d 626, 630-31 (Pa.Super. 1998).

Here, after an argument, Williams followed Martin to her car, aimed a firearm at her, and, after she drove away, fired the firearm at her car, striking the rear of the car. This evidence is sufficient to establish an intent to inflict bodily injury with a deadly weapon. ***See id***. That the bullet did not strike Martin or hit her car in such a way as to cause an injury does not mean that an intent to cause bodily injury did not exist.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/9/2024